**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

DEVONERE SIMMONDS,

                Petitioner,       :      Case No. 2:19-cv-296

    - vs -                           District Judge Edmund A. Sargus, Jr.
                                      Magistrate Judge Michael R. Merz

RONALD ERDOS, Warden,
  Southern Ohio Correctional Facility,

                                :
                Respondent.

# REPORT AND RECOMMENDATIONS

With the assistance of counsel from the Ohio Public Defender's Office, petitioner Devonere Simmonds brought this habeas corpus action under 28 U.S.C. § 2254 to challenge his convictions in the Franklin County Court of Common Pleas. The case is ripe for decision on the merits upon the Petition (ECF No. 2), the State Court Record (ECF No. 18), the Warden's Return of Writ (ECF No. 19), and Petitioner's Reply (ECF No. 26). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 27).

**Litigation History**

The criminal offenses underlying Simmonds' convictions are set forth succinctly in the decision of the Ohio Tenth District Court of Appeals as follows:

1

> {¶2} On July 21, 2013, Simmonds shot both James Norvet and Quinten Prater in the head. Prater, who was shot with a shotgun, did not survive. Three days later, on July 24, Simmonds fatally shot a third person, Imran Ashgar, a convenience store clerk during a robbery. He shot him in the eye; departed briefly; then returned and shot him a second time in the head as he lay wounded on the floor. Three days after that, during Simmonds' attempt to flee Ohio, Simmonds approached William Rudd at a gas station, shot him in the face, and stole his truck. Rudd managed to survive. Simmonds was 17 years old when he committed these offenses.

*State v. Simmonds,* 2017-Ohio-2739 (10th Dist. May 9, 2017). Having been bound over for trial as an adult, Simmonds was indicted on January 16, 2014, for two counts each of aggravated murder and murder (Ashgar and Prater), five counts of aggravated robbery (Prater, Norvet, Ashgar, and Rudd), two counts each of attempted murder and felonious assault (Norvet and Rudd), and one count of having a weapon while under a disability. (Jan. 16, 2014 Indictment, ECF No. 18, PageID 1061-73.) Each offense (except the weapon offense) included a gun specification under Ohio Rev. Code § 2941.145. *Simmonds*, 2017-Ohio-2739 at ¶ 4. The charges relating to victims Ashgar and Rudd were tried first; the counts relating to victims Prater and Norvet were severed for later jury trial and the weapons under disability charge was tried to the bench. *Id.* at ¶ 5. After conviction and sentencing at the first trial Simmonds pleaded guilty as to the severed charges. *Id.* at ¶ 10.

The procedure for sentencing was as follows:

> [*P6] On Friday, December 5, 2014, after the jury delivered its verdicts, the trial court denied a request for a presentence investigation as to Simmonds and asked counsel if they would be amenable to convening for sentencing the following Monday, December 8, 2014. (Dec. 5, 2014 Tr. Vol. 5 at 788-89.) Counsel indicated that date would be agreeable. *Id.* Other than the request for a presentence investigation (which the trial court denied), the record contains no request for a continuance at that point. *Id.*
>
> [*P7] When proceedings reconvened on December 8, the trial court found Simmonds guilty of the weapon under disability offense and immediately turned to the issue of sentencing. (Dec. 8, 2014 Hearing Tr. Vol. 6 at 797-98.) At sentencing, counsel for Simmonds offered

2

two psychological evaluations of Simmonds. *Id.* at 819-21. One was by psychologist David Tennenbaum, Ph.D. that was prepared on November 4, 2013, for an unrelated juvenile burglary case (common pleas case No. 12JU-13008) and one by psychologist Jaime Adkins, Psy.D. that was prepared on November 18, 2013 for one of the cases for which Simmonds was bound-over (common pleas case No. 13JU-11966); it was attached to the State's May 16, 2014 response to a motion by Simmonds challenging his competence to stand trial. *Id.*; May 16, 2014 Memo Contra. Arguing from these reports (which covered Simmonds' background in considerable detail) Simmonds' counsel stated:

> This case has been a recipe for disaster. We have a 17-year-old African-American male, fractured family, one out of seven children on his mother's side, one out of twelve on his father's. We have criminal activities on the part of a parent who acted as a role model. Drug use and abuse, alcohol, immaturity, vulnerability, weapons, older boys whom he looked up to. He has a ninth—grade education, an IQ range in the first percentile.
>
> I guess if you put in a convenient store and you have a hot summer night, the result is unfortunately too often very predictable.

(Dec. 8, 2014 Hearing Tr. Vol. 6 at 826.)

[\*P8] The trial court, after listening to the arguments of counsel attempted "to construct a compassionate yet a serious penalty," and reasoned as follows:

> Certainly the Court, you know, has taken into consideration their youth, their emotional immaturity, the background, the fact they're a product of our system, our criminal system at a young age. Essentially they were left to fend for themselves at age, you know, tender young ages of, you know, 12, 13, 14, and so forth, left to be on the street.
>
> And I ask myself, you know, what, you know, how would anyone cope and adapt to life on the streets at such a young age? I don't know. I don't know. I don't know what I would do or the next person would do.
>
> But, I mean, I do realize that we all have a conscience, I mean, we all are born with an ability to determine and distinguish between right and wrong. And that's what it

3

> comes down to. The fundamental ability inside ourselves
> to be able to determine what's right and wrong.

*Simmonds,* 2017-Ohio-2739. Simmonds was sentenced to an aggregate term of life imprisonment without the possibility of parole plus forty-eight years. *Id.* at ¶ 9.

Simmonds appealed raising claims of ineffective assistance of trial counsel and cruel and unusual punishment, but the Tenth District affirmed. *State v. Simmonds*, 2015-Ohio-4460 (10th Dist. Oct. 27, 2015), appellate jurisdiction declined, 145 Ohio St. 3d 1422 (2016). On September 8, 2015, Simmonds filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 claiming ineffective assistance of trial counsel "in failing to appropriately prepare for and present evidence of mitigating circumstances during sentencing." *Simmonds*, 2017-Ohio-2739, at ¶ 11. With the benefit of the Tenth District's decision on direct appeal, the trial court dismissed the post-conviction petition without a hearing. *Id.* at ¶ 12. The Tenth District affirmed. *State v. Simmonds,* 2017-Ohio-2739, appellate jurisdiction declined, 151 Ohio St. 3d 1505 (2018), *cert. denied,* 138 S.Ct. 2634 (2018).

Simmonds timely filed his habeas Petition in this Court January 30, 2019, pleading one ground for relief:

> **GROUND ONE:** Counsel's failure to investigate and present mitigating evidence of youthful characteristics on the juvenile offender's behalf constitutes deficient performance and is prejudicial when the juvenile offender is eligible for a sentence of life without the possibility of parole. Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution; *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland v. Washington*, 466 U.S. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

(Petition, ECF No. 2, PageID 112.)

4

# Analysis

Simmonds asserts in his First Ground for Relief that he received ineffective assistance of trial counsel when his trial attorney failed to present mitigating evidence at sentencing. His Petition focuses on the merits of this ineffective assistance claim.

He begins by summarizing his trial attorney's lack of preparation:

> At the close of evidence on the afternoon of Thursday, December 4, 2014, the trial court indicated its intention to proceed immediately to Devonere's sentencing in the event of guilty verdicts. (12/4/2014 T.p.669).
>
> That afternoon, one of Devonere's attorneys called the Office of the Ohio Public Defender and requested assistance with her legal argument opposing a life sentence for Devonere. (Exhibit B, PC appendix B, p.l, ¶ 4).
>
> Until Friday, December 5, 2014, Devonere's counsel was not aware of relevant U.S. and Ohio Supreme Court case law mandating individualized sentencing for children. (Exhibit B, PC appendix B, p.1, ¶ 5). The sentencing hearing was scheduled for Monday, December 8, 2014.
>
> Counsel did not request an on-the-record continuance[1] to prepare for sentencing. (Exhibit B, PC appendix B, p.1, ¶ 2). Counsel did not hire a mitigation specialist, did not consult with any experts to prepare for sentencing, and did not retain a psychologist to conduct a mitigation-focused examination. (Exhibit B, PC appendix B, p.1, ¶ 6).
>
> At the sentencing hearing, counsel did not present any records or call any witnesses to testify in mitigation. Counsel addressed adolescent development in general and submitted two older competency evaluations that had been prepared for the juvenile court. (12/8/2014 T.pp.794-857.) Counsel's argument included some relevant facts, including Devonere's age, immaturity, low IQ, substance abuse, and father's criminal activity. (12/8/2014 T.p.820-822). But, counsel's failure to fully investigate mitigating

---

[1] The Magistrate Judge reads this phrase to mean that trial counsel did not make a request for continuance on the record. It is apparently not contested that an off-record request was made in chambers and denied.

> information was apparent: the trial court inquired whether Devonere used drugs or alcohol before the shooting of Mr. Rudd, and counsel responded, "[w]e don't know." (12/8/2014 T.p.820).

(Petition, ECF No. 2, PageID 96-97.)

The Petition proceeds to discuss generally how all adolescents, including those as old as Simmonds at seventeen, are "unfinished from a neurodevelopmental standpoint." *Id.* at PageID 99, citing evidence presented with the post-conviction petition. They are "much less able to self-regulate or conform [their] behavior than . . . adults and much less able to resist social and emotional impulses." *Id.*, citing similarly filed evidence.

During post-conviction Simmonds also presented specific evidence about his own developmental deficits. *Id.* at PageID 100-102. By the time he committed these crimes, Simmonds had suffered several head injuries at various points in his life. *Id.* at PageID 103. Simmonds' upbringing created what his counsel calls a "nearly inescapable developmental pathway to criminality." *Id.* at PageID 103-106. "Though he never lived with his father, Devonere idolized him, . . ." and began to get into serious criminal trouble when his father was deported. *Id.* at PageID 106-07. A psychologist reported in post-conviction that Simmonds had been taught a "dyssocial model of morality." (ECF No. 2-2, PageID 214.)

The Petition continues to recite how the educational system had failed Simmonds.

> He was diagnosed with ADHD and was enrolled in weekly social skills sessions with a behavior specialist beginning in the first grade. (Exhibit B, PC appendix I, p.1, if 3; Exhibit B, PC appendix F, p.57). He had an individualized education plan ("IEP") and attended speech and language therapy in his young elementary years . . .
>
> He briefly attended anger therapy during his elementary years.

(Petition, ECF No. 2, PageID 108.) The juvenile justice system also failed, in the opinion of an expert, when it failed to place him "at a minimum in a long-term secure residential treatment

facility. Most likely, he would have been best placed in the Ohio Department of Youth Services that does have specialized interventions specific to delinquent, especially gang-involved youth." (*Id.* at PageID 109, quoting Exhibit B, PC appendix A, p.27, ¶ 86.)

This section of the Petition presents a well-argued claim of what could have been presented in mitigation, but it presents the information as if this Court were charged with making a *de novo* determination of the ineffective assistance of trial counsel claim. That, however, is not our task. The Tenth District Court of Appeals decided that claim on the merits. Under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), we are limited to deciding if that court's decision is an objectively unreasonable application of clearly established Supreme Court case law or an unreasonable determination of the facts based on the evidence presented. 28 U.S.C. § 2254(d)(1) and (2).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111, 122 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S.Ct. 383, 175 L.Ed.2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S.Ct. 2052, 80 L.Ed.2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S.Ct. 2052, 80 L.Ed.2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-

probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011)

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland*, *supra*, at 690; *Maryland v. Kulbicki*, 577 U.S. ___, 136 S.Ct. 2; 193 L.Ed.2d 1 (2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). *Kulbicki* rejects retrospective perfectionism regarding a defense lawyer's conduct.

When as here a habeas court is not assessing ineffective assistance of trial counsel *de novo* but with AEDPA deference, its task is to decide whether the state court's decision is an objectively unreasonable application of *Strickland* and its progeny.

> "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court decision," *Harrington v. Richter,* 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall,* 572 U.S. [415], ___ (2014), slip op. at 4.
>
> When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. [12], [17] (2013),(quoting *Strickland v, Washington*, 466 U.S. 668, 690 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, at [15].

*Woods v. Etherton*, 578 U.S. 1149, 1151 (2016)(*per curiam*, unanimous)(parallel citations omitted), reversing *Etherton v. Rivard*, 800 F.3d 737 (6th Cir. 2015).

9

> "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ___, ___, 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297(2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052, 80 L.Ed.2d 674. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674; see also *Bell* v. *Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart* v. *Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh* v. *Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at [1413], 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at [1413], 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Magistrate Judge concludes the Tenth District's decision here was an objectively reasonable application of *Strickland* and its progeny as to both the deficient performance prong and the prejudice prong which will be discussed in turn.

**Deficient Performance**

Petitioner claims his counsel did not know until the case was submitted to the jury "of relevant U.S. and Ohio Supreme Court case law mandating individualized sentencing for children." (Petition, ECF No. 2, PageID 96-97, citing Exhibit B, PC appendix B, p.1, ¶ 5.) The assertedly relevant case law consists of S*tate v. Long,* 138 Ohio St.3d 478 (2014); *Miller v. Alabama,* 567 U.S. 460 (2012); *Graham v. Florida,* 560 U.S. 48 (2010); and *Roper v. Simmons,* 543 U.S. 551 (2005). Trial counsel Jo Ellen Kaiser avers she "was not familiar with *State v. Long* and I had not read the other cases before speaking with [Ohio Assistant Public Defender Stephen] Hardwick [on the afternoon of December 5, 2014]." (Affidavit of Jo Ellen Kaiser, ECF No. 2-2, PageID 226.)

These cases do not mandate "individualized sentencing for children." In *Roper v. Simmons,* 543 U.S. 551 (2005), the Supreme Court held that the Eighth Amendment prohibits execution of those who committed aggravated murder under the age of eighteen. Later the Court held the Cruel and Unusual Punishment Clause also forbids a life without parole sentence for juvenile non-homicide offenders, *Graham v. Florida*, 560 U.S. 48 (2010), and mandatory life without parole sentences for juvenile murderers, *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller* the Court reiterated the general Eighth Amendment proposition that punishment must be proportional to the crime, but that proposition applies to both juvenile and adult offenders. While the Court has been at some pains in its juvenile capital cases to emphasize the differences between juvenile and adult offenders, differences spelled out in the neuropsychological materials presented in post-conviction, it has never held that life without parole sentences can only be imposed in the manner now common for the death penalty, to wit, after a separate mitigation trial and requiring a jury determination.

In *Long,* the Supreme Court of Ohio mandated that, before sentencing a minor for

11

aggravated murder under Ohio Revised Code § 2929.03(A), a trial court must consider the age of the defendant and the record must reflect that consideration. 138 Ohio St. 3d 478 (syllabus). The defendant in *Long*, represented by the Ohio Public Defender as is Simmonds, requested the Ohio Supreme Court to require the same process as the Wyoming Supreme Court required in *Bear Cloud v. State*, 294 P.3d 36 (2013), to wit:

> consideration of the following factors when sentencing a juvenile offender to life without the possibility of parole: (1) the character and record of the juvenile, (2) the background and mental and emotional development of the juvenile, (3) the juvenile's chronological age and the immaturity, impetuosity, and failure to appreciate the risks and consequences associated with youth, (4) the family and home environment that surrounds the juvenile, (5) the circumstances of the offense, including the extent of the juvenile's participation and the way familial and peer pressure may have affected the juvenile, (6) whether the juvenile could have been charged with and convicted of a lesser offense if not for incompetencies associated with youth, such as the juvenile's relative inability to deal with police and prosecutors or to assist his own attorney, and (7) the juvenile's potential for rehabilitation.

138 Ohio St. 3d at 482-83, ¶ 15, citing *Bear Cloud*, 294 P.3d at 36, ¶ 42. The Ohio Supreme Court expressly declined to do so, holding instead

> Although the Wyoming factors may prove helpful to courts as they select appropriate sentences for juveniles, we note that Ohio statutes do not require such findings. In imposing a prison sentence, the sentencing court has discretion to state its own reasons in choosing a sentence within a statutory range unless a mandatory prison term must be imposed.

*Long*, 138 Ohio St. 3d at 483, ¶ 16.

In sum, none of the cited case law requires individualized sentencing for juveniles except to the limited extent of prohibiting mandatory life without parole. None of these cases speak at all to what defense counsel must do when defending a juvenile murderer at sentencing.

In assessing the asserted deficient performance of trial counsel, it must be noted that attorney Kaiser did seek a continuance for prepare for sentencing. Moreover, she presented two

psychologists' reports which pointed out many of the mitigating factors on which Simmonds now insists. The only factual omission on which Simmonds now comments is that counsel did not know whether Simmonds was on alcohol or drugs before the last shooting. Quære whether the fact that a person prepares himself for a gas station robbery by drinking or taking drugs is truly a mitigating circumstance.

Lacking case law establishing what constitutes deficient performance in such cases, Simmonds' habeas counsel direct us to *Trial Defense Guidelines: Representing a Child Facing a Possible Life Sentence* promulgated by The Campaign for the Fair Sentencing of Youth. On visiting that organization's website, the first thing one sees is their policy statement "NO CHILD SHOULD SPEND LIFE IN PRISON." https://fairsentendingofyouth.org (visited 12/02/2019). The Campaign openly states the purpose of the Guidelines:

> The objective of the Guidelines is to set forth a national standard of practice to ensure zealous, constitutionally effective representation consistent with the standards established by the Supreme Court in *Miller v. Alabama*. The Guidelines draw from the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases in the capital context and the NJDC National Juvenile Defense standards in the juvenile court context.

*Id.*

Without in any way denigrating the purposes of the Campaign and value of their recommendations for a specialized practice of defending minors charged with aggravated murder, the Guidelines cannot be read as establishing minimum constitutional standard for the effective assistance of counsel in these cases. They are intentionally modeled on the ABA Guidelines for capital defense. *Id.* Even those Guidelines are not "inexorable commands" in capital cases; rather, they are "only guides for what reasonableness means, not its definition." *Post v. Bradshaw*, 621 F.3d 406 (6th Cir. 2010), *quoting Bobby v. Van Hook,* 558 U.S. 4, 8 (2009). And much as habeas counsel here propose that juvenile life defense should follow adult capital defense, "death is

different." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

In his Petition here, Simmonds conflates the two ineffective assistance of trial counsel claims he raised as assignments of error in the Tenth District which were:

> [1.] The trial court erred when it failed to consider Devonere Simmonds's claims of ineffective assistance of counsel utilizing a per-se prejudice standard of review when counsel did not present mitigation at a critical stage of the proceedings, in violation of the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution; Article I, Sections 10 and 16, Ohio Constitution; R.C. 2953.21; *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); and, *State v. Johnson*, 24 Ohio St.3d 87, 24 Ohio B. 282, 494 N.E.2d 1061 (1986).
>
> [2.] The trial court abused its discretion in making a merits determination without holding a hearing because Devonere's post-conviction petition provided sufficient operative facts to demonstrate that trial counsel was ineffective for failing to investigate and present mitigation evidence, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution; Article I, Sections 10 and 16, Ohio Constitution; R.C. 2953.21; *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012); and, *State v. Long*, 138 Ohio St. 3d 478, 2014-Ohio-849, 8 N.E.3d 890[.]

*Simmonds*, 2017-Ohio-2739 at ¶ 14. The Tenth District recognized *Strickland* as the controlling precedent. It held that, while "in a death case a *complete* failure to investigate mitigation may give rise to a presumption of prejudice" per Ohio Supreme Court case law, there was no parallel requirement for potential life without parole proceedings. *Id.* at ¶ 22. The court rejected the first assignment of error, thereby denying Simmonds' premise that what happened here was a denial of counsel at a critical stage of proceedings as precluded by *Cronic*.

In his Reply, Simmonds argues this decision was an unreasonable application of *Strickland*, "given the changing landscape of juvenile sentencing . . ." (ECF No. 26, PageID 3437). He quotes dicta from *Miller v. Alabama, supra,* that

14

> "[T]he distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller v. Alabama*, 567 U.S. 460, 472, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Even when a child commits a heinous offense, the notion that they cannot be rehabilitated is "at odds with a child's capacity for change" and is "inconsistent with youth." *Id.*, quoting *Graham v. Florida*, 560 U.S. 48, 72-74, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The Court held that juvenile-life-without-parole cases are" analogous to capital punishment" cases. *Miller* at 475, quoting *Graham* at 89 (Roberts, C.J., concurring), citing *Woodson v. North Carolina*, 420 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

(ECF No. 26, PageID 3437.)

"Identifying clearly established federal law is . . . the 'threshold question under AEDPA.'" *Dewald v. Wrigglesworth*, 748 F.3d 295, 299 (6th Cir. 2014)(quoting *Williams v. Taylor*, 529 U.S. 362, 390 (2000). In determining what constitutes clearly established federal law, "we must consult 'the holdings, as opposed to the dicta, of [the Supreme] Courts' decisions as of the time of the relevant state-court decision.'" *Id.*, quoting *Carey v. Musladin,* 549 U.S. 70, 74 (2006). Only holdings of the Supreme Court, not dicta in its opinions, can warrant habeas corpus relief. *Bryan v. Bobby,* 843 F.3d 1099 (6th Cir. 2016), citing *White v. Woodall*, 572 U.S. 415, 419 (2014).

**Prejudice**

As to the second assignment of error on post-conviction appeal, the Tenth District wrote:

> **[\*P26]** Even if we were to assume that counsel's mitigation presentation was deficient to the constitutionally significant degree required by *Strickland*, we are not convinced that the other element of *Strickland* can be met in this case. Simmonds, even before these events, had a startlingly voluminous criminal history for someone of his age, including assault, carrying a concealed weapon, burglary, and aggravated burglary. (Davis Aff. at ¶ 23, 35.) During the pendency of the action, Simmonds was transferred to the Franklin

15

> County Jail for acts that included physically attacking and spitting on staff members of the youth detention facility, wiping feces on the window of his cell to prevent observation, and making a weapon out of a sock and piece of concrete. *Id.* at ¶ 24; Jan. 13, 2014 Order Granting Transfer of Custody 13JU-10445 at 2.
>
> **[*P27]** The crimes Simmonds committed are more than disturbing. In the space of six days, he point blank shot four people in the head for no reason other than they had something he wanted. When Simmonds robbed Ashgar, he shot him in the eye. When Ashgar did not die, Simmonds returned and without provocation delivered a cold, fatal shot to Ashgar's head. When two victims survived (because Simmonds thought they were dead), Simmonds was at least relieved of an indictment for four aggravated murders; instead it was two. Simmonds' behavior is so far down the scale of acceptable social behavior that the prospect of improvement upon maturity is exceedingly remote. It is not unreasonable to find that Simmonds belongs to a class of offenders that the United States Supreme Court has termed "the rarest of juvenile offenders, [] whose crimes reflect permanent incorrigibility." *Montgomery* [*v. Louisiana*, 136 S.Ct. 718,] 734 [2017]. We are not convinced that any amount of mitigation of the sort proposed by the postconviction petition and supporting materials would have stood a reasonable probability of changing Simmonds' sentence. Having found that Simmonds cannot prove he was prejudiced by his counsel's performance, we need not reach the issue of determining whether Simmonds' counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. *See also Bradley* [42 Ohio St.3d 136,] 143 [1989], quoting *Strickland* at 697.

*State v. Simmonds,* 2017-Ohio-2739.

Simmonds argues this decision on prejudice is unreasonable because "[t]he exact information that would be discovered through investigation and presented through experts, testimony, and exhibits -- upbringing, and mental and emotional development -- is precisely what the Court has held is necessary for a proper consideration." (ECF No. 26, PageID 3440, citing *Miller* at 476.) As noted above, this range of information, recognized by *Miller* as relevant, is not held by *Miller* to be constitutionally required to avoid deficient performance. The **holding** in *Miller* is that a mandatory life without parole sentence for a juvenile murderer violated the Eighth

16

Amendment. *Miller* did not hold that a lawyer who fails to present such evidence has performed deficiently.

More significantly, *Miller* does not speak to prejudice. The trial court was presented with two recent[2] psychological reports that provided much the same kind of information as habeas counsel says should have been presented, albeit not in the detail that was presented in post-conviction. Counsel mentioned the developmental difficulties, the drugs and alcohol, the gang related behavior, the poor paternal role model and, of course, Simmonds' age. Not enough, says habeas counsel. It was counsel's duty to "provide [the] sentencing court with the type of evidence that would enable the court to reach such a definite conclusion about a juvenile's capacity to be rehabilitated before imposing the harshest penalty available on a juvenile offender." (ECF No. 26, PageID 3440.)

Assembling such information takes time. Daniel Davis, the psychologist who evaluated Simmonds in post-conviction, met with him five times over the course of four months to obtain information for his report. (Davis Affidavit, ECF No. 2-2, PageID 196, ¶ 8). Assuming this would be the average amount of time a qualified professional would need for this task, adopting a general rule requiring such information would add substantially to the time needed for felony sentencing.

Habeas counsel also assumes that with this additional information the trial judge would have been able to predict that Simmonds would have the capacity to be rehabilitated, but the Magistrate Judge is unaware of any process that would enable a judge to make such a prediction confidently. Because the length of time from conviction to execution, a number of people have been rehabilitated while on death row in Ohio. Most recently then-Governor Kasich recognized this in the commutations of the death sentences of William Montgomery and Raymond Tibbetts

---

[2] Counsel calls them "older," but both resulted form examinations of Simmonds several months after he committed these crimes.

in 2018. (*In re Ohio Execution Protocol Litigation*, Case No. 2:11-cv-1016, ECF No. 1458, PageID 55438-39 (Montgomery); ECF No. 1885, PageID 74697-99 (Tibbetts).)

Under Ohio law,

> [T]he overriding purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." To achieve these purposes, the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution." *Id*. The sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). Thus, both the nature of the offender and the possibility of the offender's rehabilitation are already points for the court's sentencing deliberation.

*State v. Long,* 138 Ohio St. 3d at 895-96, ¶ 17. Ohio law does not require trial judges to make findings of fact in which they explain how these factors have been weighed, but there is no doubt that Simmonds needed to be incapacitated, given three armed robberies and felonious assaults in three separate instances in one week's time and his obvious lack of remorse/rehabilitation from prior criminal convictions and post-arrest in this case. If the educational and juvenile justice systems failed Simmonds, they also failed his victims in more serious ways. The trial judge was mandated to impose a life sentence on Simmonds for aggravated murder, but had the choice of life without parole or with parole eligibility at twenty or thirty years. It is difficult to imagine a series of crimes by a seventeen-year-old that would qualify for the most severe of these sentences if Simmonds' crimes did not. As long as life without parole was a possible sentence, it is unlikely that more information of the sort habeas counsel says was missing would have convinced the judge to sentence Simmonds less severely.

It may be as The Campaign argues that no minor should ever be sentenced to life imprisonment. But that judgment is for the General Assembly or, if it decides to extend its Cruel

18

and Unusual Punishment jurisprudence, for the Supreme Court. But constitutional criminal justice reform under AEDPA is reserved to that Court. In this very case it declined to grant certiorari to consider a possible extension. Given the holdings the Court has actually made in the area of homicides by juveniles, it cannot be said that it was an objectively unreasonable application of *Strickland* to deny post-conviction relief on Simmond's ineffective assistance of trial counsel claim.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.

The parties have not briefed the issue of appealability. Petitioner is ordered to file a motion for a certificate of appealability not later than December 12, 2019.

December 2, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge